UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SERGIO TORREZ,

                        Plaintiff,                                Case No. 1:06-cv-903

v.                                                 HON. JANET T. NEFF

KENNETH McKEE et al.,

                         Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff filed the instant action in the Eastern District of Michigan on December 14, 2006, and the case was transferred to the Western District of Michigan on December 20, 2006.[1]  (*See* Dec. 22, 2006 Order, Dkt 3.)

       Plaintiff is presently incarcerated at the Thumb Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Bellamy Creek Correctional Facility (IBC).  In his *pro se* fourth amended complaint,[2] Plaintiff sues IBC Warden Kenneth McKee, IBC School Principal Tony Costello, IBC Classification Director Ann Smolinski, IBC Assistant Resident Unit Supervisor (ARUS) Lisa English, IBC Corrections Officers (unknown) Peterson and B. Angel, and Michigan Department of Corrections (MDOC) Education Director J. DeRose.  Plaintiff alleges

---

[1]Plaintiff filed a previous lawsuit, *Torrez v. McKee et al.,* No. 1:05-cv-785 (W.D. Mich. Dec. 22, 2005), which this Court dismissed because Plaintiff failed to exhaust his available administrative remedies.

[2]This Court ordered Plaintiff to file a fourth amended complaint after he filed several supplements to his original complaint.  (*See* Nov. 9, 2007 Op. & Order, Dkts 47-48; *see also* Jan. 8, 2008 Order, Dkt 59.)  The Court only refers to Plaintiff's fourth amended complaint in this opinion.

that Defendants McKee, Costello, DeRose, Smolinski and English engaged in retaliatory and discriminatory conduct in violation of his First and Fourteenth Amendment rights.[3]  (Am. Compl. at 10-11; Dkt 50.)  Plaintiff further argues that Defendants Peterson and Angel retaliated against him in violation of his First Amendment rights.  (*Id.* at 8-9.)

On January 12, 2007, this Court ordered service of Plaintiff's complaint on Defendants McKee, Costello, DeRose, Smolinski and English.  Thereafter, Defendants filed motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6), Plaintiff filed responses and Defendants filed replies to Plaintiff's responses.  Because this Court ordered Plaintiff to file a fourth amended complaint on November 9, 2007, the Court dismissed all of the preceding motions without prejudice.  (*See* Nov. 9, 2007 Op. & Order, Dkts 47-48.)  After reviewing Plaintiff's fourth amended complaint, the Court ordered service of Plaintiff's amended complaint on Defendants Peterson and Angel on January 8, 2008 for Plaintiff's claims of retaliation.  (*See* Jan. 8, 2008 Order, Dkt 59.)

On January 24, 2008, Defendants McKee, Costello, DeRose, Smolinski and English filed a motion and brief to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6), or alternatively, to grant summary judgment for Defendants pursuant to FED. R. CIV. P. 56(b) based on (1) Plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), (2) the merits of Plaintiff's claims and (3) qualified immunity (Dkts 60-61).[4]  On February 19, 2008 and March

---

[3]Plaintiff also asserts an Eighth Amendment claim against Defendants in his amended complaint.  The Court previously dismissed his Eighth Amendment claim for failure to state a claim.  (*See* Nov. 9, 2007 Op. & Order, Dkts 47-48.)

[4]Defendants McKee, Costello, DeRose, Smolinski and English's motion and Defendant Peterson's motion are entitled "Motion to Dismiss or for Summary Judgment."  A complaint may be dismissed pursuant to Rule 12(b)(6) where the allegations of the complaint itself show that the plaintiff is not entitled to relief.  *See Jones v. Bock*, 127 S. Ct. 910, 920-21 (2007).  Here, Defendants rely upon exhibits that were not attached to the complaint.  It is well established that exhibits outside the pleadings may not generally be relied upon in ruling upon a Rule 12(b)(6) motion to dismiss.  *See Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 603 (6th Cir. 2005).  Rule 12(d) provides that if on a motion to dismiss for failure to state a claim brought under 12(b)(6), "matters outside the pleadings are presented to and not

21, 2008, Plaintiff filed responses and briefs to Defendants' motion (Dkts 67-68, 75-76). On February 27, 2008, Defendant B. Angel filed a motion and brief for summary judgment based on the merits of Plaintiff's claims and qualified immunity (Dkts 70-71.) On March 21, 2008, Plaintiff filed a response to Defendant Angel's motion for summary judgment (Dkt 77). On July 9, 2008, Defendant (unknown) Peterson filed a motion to dismiss or for summary judgment and brief in support based on Plaintiff's failure to exhaust administrative remedies (Dkts 87-88). On August 8, 2008, Plaintiff filed a response to Defendant Peterson's motion (Dkt 90). Defendant Peterson filed a reply to Plaintiff's response (Dkt 92) on August 14, 2008.

Upon review, Defendants Kenneth McKee, Tony Costello, J. DeRose, Ann Smolinski and Lisa English's motion for summary judgment (Dkt 60) will be granted in part and denied in part. The Court will grant Defendant Angel's motion for summary judgment (Dkt 70). The Court will also grant Defendant Peterson's motion for summary judgment (Dkt 87).

The Court determines that Plaintiff's equal protection claims against Defendants McKee, Costello, DeRose and Smolinski fail to state a claim and will therefore be dismissed pursuant to pursuant to 28 U.S.C. § 1915(e)(2). However, the Court concludes that Plaintiff's retaliation claims against Defendants McKee, Costello, DeRose, Smolinski and English state a cognizable claim.

---

excluded by the court, the motion must be treated as one for summary judgment under Rule 56 [and] "[a]ll parties must be given reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). Accordingly, I will construe Defendants McKee, Costello, DeRose, Smolinski and English's motion and Defendant Peterson's motion as motions for summary judgment. All parties have been "given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b). Plaintiff has filed replies to all of Defendants' motions. (*See* Dkts 67-68, 75-76, 90.)

## Summary Judgment Legal Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative

defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).

The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show [] the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff, a native of Puerto Rico, claims that he received a Puerto Rican certificate of high school equivalency on January 20, 1987. (Aff. at 1, Ex. B to Aff.; Dkt 51.) The certificate is written in Spanish. (Ex. 4 to Am. Compl; Dkt 50.) Prison officials at the Ojibway Correctional Facility (OCF) confirmed Plaintiff's education with the Puerto Rican Department of Education and recognized the certificate as sufficient to meet the MDOC's General Educational Development (GED) testing requirements. (Am. Compl. at 3; Aff. at 2.) Upon his transfer to IBC in 2005, however, ARUS English rejected Plaintiff's foreign diploma and classified Plaintiff as being in need of a GED. (Am. Compl. at 8.)

When Plaintiff confronted ARUS English about his diploma, ARUS English, using profanity and racial slurs, told him that his Puerto Rican certificate did not mean anything. (*Id.*) Specifically, ARUS English stated: "[Y]ou are nothing but a drug-dealer, a criminal with no rights whatsoever! Get your ass out of my office before I put your ass in the hole." (*Id.*) Plaintiff filed a grievance against ARUS English on March 27, 2005 and sent a letter to Defendant McKee's office. (Am. Compl. at 3, 8; Ex. 1 to Am. Compl.) Upon receipt of Plaintiff's correspondence, the Deputy Warden and School Principal Costello referred Plaintiff's diploma to Education Director DeRose. (Ex. 5. to Am. Compl.) Education Director DeRose concluded that OCF should not have verified Plaintiff's foreign diploma because the MDOC cannot translate those diplomas or compare them to a diploma from the United States. (Am. Compl. at 8; Ex. 5 to Am. Compl.) Defendants, therefore, recommended that Plaintiff attend Spanish GED classes, but Plaintiff refused. (Exs. 1 & 5 to Am. Compl.)

As a result of Plaintiff's grievance against ARUS English, Officer Peterson began to harass Plaintiff by performing shake-downs of his personal and legal property on a daily basis. (Am. Compl. at 8-9.) Officer Peterson confiscated or destroyed Plaintiff's personal and legal property during the shake-downs. (*Id.*) At one of the shake-downs, Officer Peterson stated, "[y]ou better quit filing grievances or I will put you in the hole. You are nothing, and we don't put up with prisoners' bull-shit." (*Id.* at 9.) Plaintiff alleges that Defendants McKee and English were aware of Officer Peterson's conduct but refused to do anything about it. (*Id.*)

On February 15, 2006, Officer Angel performed a pat-down search of Plaintiff. (Exs. 6 & 7 to Am. Compl.) Officer Angel allegedly found eight gambling tickets on Plaintiff and issued a major misconduct ticket for gambling paraphernalia to Plaintiff. (*Id.*) At that time, Officer Angel

- 6 -

stated "[s]o, you are the guy who is filing grievances against us, ah?"  (Aff. at 2, Dkt 51.)  After pleading guilty to the misconduct charge, Plaintiff received seven days of detention.  (Ex. 7 to Am. Compl.)

On March 27, 2006, Officer Hull issued a Major Misconduct Report to Plaintiff for threatening behavior based on a confidential informant's statements.  (Am. Compl. at 9; Ex. 7 to Am. Compl.)  The informant allegedly stated that Plaintiff solicited other prisoners to harm Officer Peterson for $20.00.  (Ex. 8 to Am. Compl.)  The Hearings Officer found Plaintiff guilty of the misconduct charge and Plaintiff received thirty days detention in punitive segregation.  The MDOC subsequently transferred Plaintiff to Oaks Correctional Facility, a higher security level facility, where Plaintiff remained in the "hole" for six months rather than thirty days.  (Am. Compl. at 9-10.)

At Thumb Correctional Facility (TCF), Plaintiff states that TCF School Principal Laquita Featherstone verified his diploma with the Puerto Rico Department of Education.  (Aff. at 2.)  However, Defendant DeRose continues to order TCF to invalidate their verification of Plaintiff's diploma.  (*Id.*)

Plaintiff filed three grievances.  First, Plaintiff filed Grievance No. IBC-05-03-1229-17i on March 27, 2005 against Defendant English for retaliation and discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Ex. 1 to Am. Compl.)  Plaintiff appealed the grievance to Step III.  (*Id.*)  Second, Plaintiff filed Grievance No. IBC-05-05-1985-17e on April 1, 2005 against Defendants Costello and Smolinski for discrimination in violation of his rights under the Fourteenth Amendment.  (Ex. 2 to Am. Compl.) While Plaintiff appealed the grievance through Step III, the grievance was rejected at Step II as duplicative of the issues in Grievance No. IBC-05-

03-1229-17i.  (*Id.*)  Third, Plaintiff filed Grievance No. IBC-06-02-439-28a[5] on February 2, 2006 against Defendants Costello, Smolinski, McKee, DeRose and English for violating his First and Fourteenth Amendment rights.  (Ex. 3 to Am. Compl.)  Although Plaintiff appealed the grievance through Step III, the grievance was rejected at Step III as duplicative of the issues in Grievance No. IBC-05-03-1229-17i.  (*Id.*)

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## Discussion

### I. Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint.  *See Freeman*, 196 F.3d at 645.  Further, "the PLRA exhaustion requirement requires *proper* exhaustion."  *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added).  Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 127 S. Ct. at 922; *Woodford*, 126 S. Ct. at 2386.  "Compliance with [the] prison

---

[5]The Step III Grievance Response for Grievance No. IBC-06-02-439-28a identifies the grievance as ECF-06-02-439-28a.  For purposes of this opinion, the Court shall reference the grievance as Grievance No. IBC-06-02-439-28a.

grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 126 S. Ct. at 2384. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ." *Id.* at 848 (citation omitted; emphasis in original).

In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default. *Woodford*, 126 S. Ct. at 2387. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a

prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.")  Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a).  *See Spruill*, 372 F.3d at 232.

## A.  MDOC Grievance Policy

Michigan Department of Corrections, Policy Directive 03.02.130 (effective Dec. 19, 2003)[6], sets forth the applicable grievance procedures for prisoners in MDOC custody.  Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue.  MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ R, X.  The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due.  *Id.* at ¶¶ R, DD.  The

---

[6]The MDOC amended the Policy Directive on March 5, 2007 and July 9, 2007.  However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

respondent at Step II is designated by the policy, e.g., the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

With regard to content, the policy requires that the issues be presented briefly. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T. The policy further states, "Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e. who, what, when where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* In *Jones*, the Supreme Court rejected the requirements imposed by the Sixth Circuit that, in order to properly exhaust, all defendants named in the complaint must have been named in the Step I grievance. 127 S. Ct. at 922-23. However, the *Jones* Court relied upon the version of the policy that took effect on November 1, 2000. In that version of the policy, there was no requirement that particular officials must be named in a Step I grievance. In this case, the version of the policy that became effective on December 19, 2003 governs the grievances filed by Plaintiff. As set forth above, the 2003 version of the policy requires a prisoner to provide in his grievance the names of all those involved in the issue.

- 11 -

### 1. **Grievances**

Plaintiff filed three grievances concerning the claims raised in his complaint.  Each of the grievances will be discussed below.

#### i.    **Grievance No. IBC-05-03-1229-17i**

Plaintiff filed Grievance No. IBC-05-03-1229-17i on March 27, 2005 against Defendant English for discriminating against him by failing to recognize his Puerto Rican diploma in violation of the Equal Protection Clause of the Fourteenth Amendment.  (MDOC Step I Grievance No. IBC-05-3-1229-17I at 2, Ex. 1 to Am. Compl, Dkt 50.)  Plaintiff appealed the grievance to Step III.  In their motion for summary judgment, Defendants McKee, Costello, DeRose, Smolinski and English concede that Plaintiff's equal protection claim against Defendant English is exhausted.  (Defs.' Br. in Supp. of Mot. for Summ. J. at 2, Dkt 61.)

#### ii.    **Grievance No. IBC-05-05-1985-17e**

Plaintiff filed Grievance No. IBC-05-05-1985-17e on April 1, 2005 against Defendants Costello and Smolinski.  The grievance states that Defendants Costello and Smolinski discriminated against him by not recognizing his Puerto Rican diploma in violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff appealed the grievance through Step III.  Defendants claim that the grievance was not properly exhausted because it was rejected at Step II as duplicative of Grievance No. IBC-05-03-1229-17i.  (Defs.' Br. in Supp. of Mot. for Summ. J. at 2, Dkt 61.)  The Step II grievance respondent relied upon Policy Directive 03.02.130, ¶ G(1), which states that a grievance may be rejected if "[i]t is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant."  MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ G(1).

The grievance forms reflect, however, that while the grievance was rejected at Step II as duplicative, the Step III response was ambiguous, suggesting that the grievance was rejected on the merits.   The Step III grievance provides:

> The Grievant presents an issue which alleges there is staff corruption at IBC because officials will not honor his high school diploma.   Grievant wants this situation remedied as relief for filing this grievance.   This grievance was processed at the local level in accordance with the provisions of Policy Directive and Operation Procedure 03.02.130 (Prisoner/Parole Grievances).

> The investigator reviewed the record presented with the appeal to step three.   All relevant information was considered.   Based on the review, this writer finds staff properly responded to the grievance and addressed the merits of the main issue grieved.   Sufficient evidence was not provided to demonstrate staff corruption. When documents can't be verified in accordance with PD[]05.02.112 prisoners are required to enroll in school.   The step I and II responses are upheld at this level.   The grievance appeal is denied.

(Ex. 2 to Am. Compl., Dkt 50.)

As stated above, prison officials must rely on the default by rejecting the grievance as procedurally defective in order for the claims asserted in the grievance to be procedurally defaulted. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).   To determine whether Plaintiff has been denied relief based on a procedural default, the court looks to the last reasoned judgment rejecting the federal claim.   *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);   *Hicks,* 377 F.3d at 551.   The doctrine is applicable if "the last state court to review [the petitioner's] conviction 'clearly and expressly' relied on [the petitioner's] procedural default in its decision affirming the petitioner's conviction."   *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Here, the last reasoned decision at Step III was at best equivocal, invoking the procedural default in an ancillary manner only.   Consequently, Defendants have failed to meet their burden of demonstrating that Plaintiff failed to properly exhaust the claims raised in this grievance.

- 13 -

Moreover, Plaintiff only named Defendant English in Grievance No. IBC-05-03-1229-17i. Because Plaintiff asserted claims against Defendants Costello and Smolinski for the first time in the instant grievance, Plaintiff's claims against them are not duplicative and should not be considered procedurally defaulted. *See Spruill*, 372 F.3d at 232 ("[A] prison grievance system's procedural requirements [may] not be imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a).")  Consequently, Defendants did not satisfy their burden of demonstrating that Plaintiff failed to properly exhaust his equal protection claims against Defendants Costello and Smolinski.

### iii.   Grievance No. IBC-06-02-439-28a

Plaintiff filed Grievance No. IBC-06-02-439-28a on February 9, 2006 after the Court dismissed his first case, *Torrez v. McKee,* 1:05-cv-785 (W.D. Mich. Dec. 22, 2005), for lack of exhaustion.  In Grievance No. IBC-06-02-439-28a, Plaintiff argued that Defendants McKee, Costello, Smolinski and DeRose discriminated against him, as a Puerto Rican, by failing to acknowledge his educational achievements in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Ex. 3 to Am. Compl.)  Plaintiff also alleged that Defendant English retaliated against him for challenging the Defendants' "arbitrary discrimination," by insulting and belittling him with racial epithets, and locking him up.[7]  (*Id.*)

The MDOC issued a Step I response on February 10, 2006 denying the grievance as untimely and duplicative of Grievance No. IBC-05-03-1229-17i.  Plaintiff then appealed his grievance to Step

---

[7]The Court notes that Plaintiff alleged the same facts in Grievance No. IBC-05-03-1229-17i but based his grievance on the Equal Protection Clause under the Fourteenth Amendment rather than a retaliation claim under the First Amendment.  Plaintiff's retaliation claim is clearer in Grievance No. IBC-06-02-439-28a.  Even if Plaintiff sufficiently alleged a retaliation claim in Grievance No. IBC-05-03-1229-17i, Plaintiff exhausted Grievance No. IBC-05-03-1229-17i through the three-step grievance process.  In the opinion of the undersigned, the conclusion regarding Plaintiff's retaliation claim does not change.

II.  The Step II response found that the Step I  response was adequate.  Plaintiff finally appealed his grievance to Step III.  On May 22, 2006, the Step III Respondent denied Plaintiff's grievance as follows:

> The Grievant presents an issue which alleges he is being forced to participate in school because the facility will not accept his equivalency diploma from Puerto Rico. Grievant wants to pursue his case in court as relief for filing this grievance.  This grievance was rejected at the local level in accordance with the provisions of Policy Directive and Operation Procedure 03.02.130 (Prisoner/Parole Grievances).
>
> The investigator reviewed the record presented with the appeal to step three.  All relevant information was considered.  Based on the review, this writer finds staff properly responded to the grievance and addressed the merits of the main issue grieved.  This grievance is noted to be [] duplicat[ive] of grievance IBC-05-03-1229-17a.  The step I and II responses are upheld at this level.  This grievance appeal is denied.

(Ex. 3 to Am. Compl.)

Defendants McKee, Costello, DeRose, Smolinski and English argue that Grievance No. IBC-06-02-439-28a is unexhausted because it is duplicative and untimely.  The Court shall look to the last reasoned judgment rejecting the federal claim.  *Ylst*, 501 U.S. at 803-04; *Hicks*, 377 F.3d at 551. Because the Step III Respondent specifically noted that the grievance was duplicative of Grievance No. IBC-05-03-1229-17a, the Court shall review that procedural default.  MDOC Policy Directive 03.02.130, ¶ G, states that a grievance may be rejected when it is "vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant."

The MDOC properly rejected Grievance No. IBC-06-02-439-28a against Defendant English for being duplicative of Grievance No. IBC-05-03-1229-17i regarding his equal protection claim against Defendant English.  Plaintiff filed Grievance No. IBC-05-03-1229-17i against Defendant English for violating his equal protection rights by refusing to accept his Puerto Rican diploma.  In

Grievance No. IBC-06-02-439-28a, Plaintiff also asserts that Defendant English violated his First and Fourteenth Amendment rights.  (Ex. 3 to Am. Compl.)  Plaintiff named Defendant English in Grievance No. IBC-06-02-439-28a; therefore, he was prohibited from filing another grievance against Defendant English asserting the *same* claims under Policy Directive 03.02.130, ¶ G. Because Plaintiff failed to comply with Policy Directive 03.02.130, ¶ G, he did not properly exhaust his administrative remedies against Defendant English for his equal protection claim in Grievance No. IBC-06-02-439-28a.  *See Woodford,* 126 S. Ct. at 2386; *see also Kinard v. Rubitschun,* No. 2:05-cv-74131, 2007 WL 655309, at *8 (E.D. Mich. Feb. 27, 2007).  Nevertheless, in Section I(A)(1)(i) of this opinion, Defendants admitted that Plaintiff exhausted his equal protection claim against Defendant English in Grievance No. IBC-05-03-1229-17i.  Therefore, Plaintiff's equal protection claim is exhausted against Defendant English regardless of the procedural default analysis of this section.

This Court also finds that the MDOC's rejection of Grievance No. IBC-06-02-439-28a, as duplicative of Grievance No. IBC-05-03-1229-17i, against Defendants McKee, Costello, DeRose and Smolinski as well as the retaliation claim against Defendant English, is misplaced.  *See Spruill*, 372 F.3d at 232.  The MDOC erred in dismissing Plaintiff's grievance as duplicative.  Plaintiff did not name Defendants McKee, Costello, DeRose and Smolinski in his earlier grievance, Grievance No. IBC-05-03-1229-17i, nor did Plaintiff allege a retaliation claim against Defendant English in Grievance No. IBC-05-03-1229-17i.  Because Plaintiff asserted First and Fourteenth Amendment claims against Defendants McKee, Costello, DeRose and Smolinski and a First Amendment retaliation claim against Defendant English for the first time in Grievance No. IBC-06-02-439-28a, the MDOC should not have rejected Grievance No. IBC-06-02-439-28a as duplicative of those

claims and Defendants.  Accordingly, Defendants failed to satisfy their burden for Plaintiff's First and Fourteenth Amendment claims as to Defendants McKee, Costello, DeRose and Smolinski and Plaintiff's First Amendment claim against Defendant English.

### iv.     **Defendants Angel and Peterson**

Plaintiff alleges that Defendants Angel and Peterson retaliated against him in violation of his First Amendment rights in his amended complaint.  (Am. Compl. at 8-9, Dkt 50; Jan. 8, 2008 Order, Dkt 59.)  Defendants Angel and Peterson filed motions for summary judgment in response to Plaintiff's amended complaint.  In Defendant Angel's motion for summary judgment, he only addressed the merits of Plaintiff's amended complaint rather than the exhaustion issue.  Therefore, the Court will consider Defendant Angel's motion in Section II below.

Defendant Peterson argues that Plaintiff failed to exhaust his retaliation claim against Peterson through the three-step process grievance process.  (Def. Peterson's Br. in Support of Mot. for Summ. J. at 5, Dkt 87.)  Plaintiff does not argue or allege that he exhausted his available administrative remedies by filing a grievance through the three-step grievance process for his retaliation claim against Defendant Peterson.  Rather, Plaintiff argues that he is not required to name anyone in a grievance under the holding in *Jones*.  Plaintiff states that the *Jones* Court held that Policy Directive 03.02.130 does not require a prisoner to name anyone in the grievance.  (Pl.'s Br. in Supp. of Pl.'s Reply to Defs.' Mot. for Summ. J. at 3-4, Dkt 68; Pl.'s Reply to Def. Peterson's Mot. at 2; Dkt 90.)  "As the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923.

- 17 -

The *Jones* Court, however, dealt with Policy Directive 03.02.130, effective November 1, 2000.  In that version of Policy Directive 03.02.130 there was no requirement that particular officials be named in a grievance. In this case, Policy Directive 03.02.130, effective December 19, 2003, requires that a grievance name all of the individuals being grieved.

The PLRA requires a prisoner to exhaust the administrative remedies available to him or her before bringing a claim under § 1983.  42 U.S.C. § 1997e(a); *see also Porter*, 534 U.S. at 532; *Booth*, 532 U.S. at 733.  To properly exhaust, the *Woodford* Court found that a plaintiff must comply with the administrative agency's "critical procedural rules."  *Woodford,* 126 S. Ct. at 2388.  As discussed above, Policy Directive 03.02.130, ¶ T, requires a prisoner to name all those involved in the issue being grieved.  MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T.  Defendant Peterson therefore properly asserts that Plaintiff is required to name him in a grievance to exhaust his available administrative remedies against him.

In his reply to Defendant Peterson's motion for summary judgment, Plaintiff argues that he exhausted his claim against Defendant Peterson because he filed a "staff corruption" grievance, Grievance No. 172417, 29a, directly to Step III.  Defendant Peterson is allegedly included in the general term "staff" because Plaintiff did not know Officer Peterson's name.  (Pl.'s Reply to Def. Peterson's Mot. at 2; Dkt 90.)  In Grievance No. 172417, 29a, Plaintiff refers to "staff corruption' in the following context (verbatim):  "Note:  These responses from <u>School Principle "T. Costello" and "Program Classification Officer (sp) "Smolinder"</u>, are nothing more that <u>staff corruption</u> to cover up, for <u>Counselor English</u>, words, actions, and deeds, as well as treatment of me, because of my "race" and "national origin." (emphasis in original.)  (Ex. 1 to Def. Peterson's Resp., Dkt 92.)  All of Plaintiff's references to "staff corruption" in the grievance pertain to an equal protection claim

under the Fourteenth Amendment. Nothing in Plaintiff's grievance alleges or states a retaliation claim under the First Amendment against "staff." Defendant Peterson correctly states that none of Plaintiff's grievances, including Grievance No. 172417, 29a, complains about the retaliatory cell searches by Officer Peterson. (Def. Peterson's Resp. at 2-3.)

As discussed above, Policy Directive 03.02.130, ¶ T, requires that information in a grievance shall provide facts regarding the issue being grieved (i.e., who, what, when, where, why, how). As Plaintiff did not include any facts about his retaliation claim against Defendant Peterson in Grievance No. 172417, 29a, Defendant Peterson satisfied his burden by demonstrating that Plaintiff failed to exhaust his available administrative remedies against him.

### v. **Retaliation**

Besides the retaliation claims against Defendants English, Angel and Peterson discussed above, Plaintiff also asserts retaliation claims against Defendants McKee, Costello, DeRose, and Smolinski in his fourth amended complaint. (Am. Compl. at 10-11.) Defendants did not address the exhaustion aspect of Plaintiff's claims of retaliation against Defendants McKee, Costello, DeRose, and Smolinski in their motion for summary judgment. (*See* Defs.' Br. in Supp. of Mot. for Summ. J., Dkt 61.) As a result, Defendants failed to satisfy their burden to plead and prove that Plaintiff failed to exhaust his administrative remedies as to Defendants McKee, Costello, DeRose, and Smolinski.

### vi. **Exhaustion Summary**

In summary, the Court finds that Defendants failed to satisfy their burden as to the following claims: (1) Plaintiff's equal protection claim in Grievance No. IBC-05-03-1229-17i against Defendant Lisa English; (2) Plaintiff's equal protection claims against Defendants Tony Costello

and Ann Smolinski in Grievance No. IBC-05-05-1985-17e; (3) Plaintiff's equal protection claims against Defendants Kenneth McKee, Tony Costello, J. DeRose and Ann Smolinski and retaliation claim against Defendant Lisa English in Grievance No.  IBC-06-02-439-28a; and (4) Plaintiff's retaliation claims against Defendants Kenneth McKee, Tony Costello, J. DeRose, and Ann Smolinski.  On the other hand, I find that Defendant Peterson satisfied his burden regarding Plaintiff's failure to exhaust his administrative remedies for Plaintiff's retaliation claim against Defendant Peterson.

II.        Merits

As noted above, Defendants McKee, Costello, DeRose, Smolinski and English included arguments regarding the merits of Plaintiff's claims in their motion for summary judgment. Defendant Angel also submitted a summary judgment motion to the Court on the merits.  In this Section, the Court will review Defendants' motions for summary judgment on the merits.

A.   Defendants McKee, Costello, DeRose, Smolinski and English's Motion for Summary Judgment

In their motion for summary judgment, Defendants McKee, Costello, DeRose, Smolinski and English argue that they are entitled to summary judgment because (1) the evidence does not support that Defendant English discriminated against Plaintiff; (2)  Defendant McKee only acted as a Step II Respondent to Plaintiff's grievances, and, thus, was not personally involved in Plaintiff's action; and (3) Defendants are entitled to qualified immunity.  (Defs.' Br. in Supp. of Mot. for Summ. J. at i, Dkt 61.)  Defendants did not address all of Plaintiff's claims, such as Plaintiff's equal protection claims against Defendants McKee, Costello, DeRose and Smolinski and retaliation claims against Defendants McKee, Costello, DeRose, Smolinski and English, in their motion for summary judgment.  Regardless, this Court, under  28 U.S.C. § 1915(e)(2) may dismiss Plaintiff's claims at

- 20 -

any time if the action fails to state a claim upon which relief may be granted.[8]  *See* 28 U.S.C. § 1915(e)(2).

## 1.  **Equal Protection Clause**

Plaintiff alleges that Defendants McKee, Costello, DeRose, Smolinski and English violated his rights under the Equal Protection Clause for failing to recognize his Puerto Rican diploma.  In their motion for summary judgment, Defendants McKee, Costello, DeRose, Smolinski and English argue that Plaintiff has not shown a violation of his Fourteenth Amendment right to equal protection as to Defendant English.  (Defs.' Br. in Supp. of Mot. for Summ. J. at 8-11, Dkt 61.)  Because Defendants did not address Plaintiff's claims against Defendants McKee, Costello, DeRose and Smolinski, the Court will review Plaintiff's equal protection claims against those Defendants under 28 U.S.C. § 1915(e)(2).

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or

---

[8]A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.  *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Under strict scrutiny, the government has the burden of proving that suspect classifications "'are narrowly tailored measures that further compelling governmental interests.'" *Johnson v. California,* 543 U.S. 499, 505 (2005) (citing *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995)). If a suspect class or fundamental right is not at issue, the rational basis standard of review applies. "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006) (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).

### i. **Strict Scrutiny**

The Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) held that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." A court addressing this issue must keep in mind the fundamental principle that "'official action will not be held unconstitutional solely because it results in a racially disproportionate impact . . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" *Hernandez v. New York,* 500 U.S. 352, 359 (1991) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264-65 (1977)). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected . . . a particular course of action at

least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."

*Hernandez,* 500 U.S. at 359 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

a. Direct Evidence

Plaintiff, however, has failed to provide any direct evidence that his race and national origin were motivating factors in Defendants' McKee, Costello, DeRose and Smolinski's refusal to verify his Puerto Rican diploma.  As noted above, Plaintiff asserts that Defendant English discriminated against him by using profanity and racial slurs.  Defendant English allegedly told Plaintiff that he was in the United States and his Puerto Rican GED Certificate did not mean anything.  (Am. Compl. at 8.)  "[Y]ou are nothing but a drug-dealer, a criminal with no rights whatsoever!  Get your ass out of my office before I put your ass in the hole."  (*Id.*)  Defendant English argues that she is entitled to summary judgment because such conduct does not rise to the level of a constitutional violation. (Defs.' Br. in Supp. of Mot. for Summ. J. at 9-10.)

A defendant's mere use of racially discriminatory language such as a racial slur or epithet, by itself, does not constitute a violation of the Fourteenth Amendment right to equal protection.  It can constitute some evidence of a defendant's intent or purpose to discriminate against a plaintiff on account of the plaintiff's race.  For there to be an actionable violation of the Fourteenth Amendment right to equal protection, a racial slur or epithet made by a defendant must be coupled with an adverse action taken against the plaintiff.  *Taylor v. City of Falmouth*, 187 F. App'x 596, 601 (6th Cir. 2006); *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003) (Moore, J., concurring in part and dissenting in part); *see also Thomas v. Karr*, No. 2:06-cv-227, 2007 WL 2728741, at *4 (W.D. Mich. Sept. 17, 2007) ("occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude") (citing

*Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000).

Here, none of Defendant English's comments were explicitly racial.  Moreover, Defendant English made the statements well after Plaintiff had been assigned to attend school.  Further, as stated above, Defendant English had no authority to accept or reject Plaintiff's Puerto Rican diploma.

### b.  Circumstantial Evidence

In the absence of direct evidence of discrimination, a plaintiff can prove race or national origin-discrimination by use of the circumstantial evidence test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (citing *McDonnell Douglas Corp.*, 411 U.S. 792 (1973), and *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981)).  In order to establish a prima facie case of discrimination, a plaintiff must show four elements: (1) that he was a member of a protected group; (2) that he was subject to an adverse action; (3) that he was qualified for the placement sought; and (4) that he was treated differently than similarly situated non-protected employees.  *Russell,* 537 F.3d at 604 (citation omitted).  Once a plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's treatment.  *Id.*  The burden then shifts back to the plaintiff to demonstrate that the proffered reason was pretextual.  *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 39 F.3d 1078, 1084 (6th Cir. 1994)).

Here, Plaintiff failed even to allege that he was being treated differently than other inmates with foreign diplomas, regardless of their nationality.  (*See* Ex. 1 to Am. Compl.)  He therefore has failed to show an essential element of his prima facie case.  *See Russell,* 537 F.3d at 604.

Moreover, Defendants have offered a race and national origin-neutral basis for their denial of Plaintiff's Puerto Rican diploma: they simply could not translate Plaintiff's diploma or verify that it was equivalent to a United States high school diploma because it was written in Spanish.  (Defs.' Br. in Supp. of Mot. for Summ. J. at 10; Am. Compl. at 8; Ex. 5 to Am. Compl.; Exs.3 -5 to Defs.' Br. in Supp. of Mot. for Summ. J.)  Further, School Principal Costello stated that all MDOC principals were directed by Education Manager DeRose not to verify foreign diplomas. (Ex. 5 to Defs.' Br. in Supp. of Mot. for Summ. J.)  Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendants' race-neutral reason was pretextual.  Accordingly, Plaintiff fails to show that Defendants' decision involved the use of a suspect classification.  As a result, Plaintiff fails to state an equal protection claim against Defendants McKee, Costello, DeRose and Smolinski.

### ii. **Rational Basis**

Because neither a suspect class nor a fundamental right is at issue, the rational basis standard of review applies.  *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298.  Plaintiff bears the burden of demonstrating that the government lacks a rational basis, and they may satisfy this burden either by negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298 (quoting *Warren,* 411 F.3d at 711); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

(to prove his equal protection claim, a plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). The state, conversely, bears no burden of proof; its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" *Club Italia Soccer & Sports Org., Inc.,* 470 F.3d at 298 (quoting *Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005)).

In her affidavit attached to Defendants' Motion for Summary Judgment, Defendant English averred that she acted in good faith in accordance with her job as prison counselor. (Ex. 2 to Defs.' Br. in Supp. of Mot. for Summ. J., Dkt 61). Defendant English asked Plaintiff which job pool he would like to be placed in and told Plaintiff that the MDOC was waiting on verification of his GED. Defendant English does not play any role in verifying prisoners' GEDs. Further, Defendant English does not understand Spanish. Defendant English forwarded the Classification office a copy of Plaintiff's Puerto Rican certificate. (*Id.*) Defendant English therefore has shown a rational basis for her actions.

Plaintiff is also complaining that he could not obtain prison employment due to his classification. Because they could not verify his high school diploma, Defendants recommended that Plaintiff attend Spanish GED classes, but Plaintiff refused. (Exs. 1 & 5 to Am. Compl.) Pursuant to MDOC policy, a prisoner who has refused to accept a school assignment may be reclassified as "unemployable." *See* MICH. DEP'T. OF CORR., Policy Directive 05.01.100, ¶ Y(3) (effective Jan. 1, 2001). Since Plaintiff refused to attend Spanish GED classes, Plaintiff was unable to obtain prison employment. (Ex. 1 to Am. Compl.; Ex. 3 to Defs.' Br. in Supp. of Mot. for Summ.

J.) Inmates, however, have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).

Accordingly, the Court will grant Defendants McKee, Costello, DeRose, Smolinski and English's motion for summary judgment as to Plaintiff's discrimination claim against Defendant English. The Court will also dismiss Plaintiff's equal protection claims against Defendants McKee, Costello, DeRose and Smolinski for failure to state a claim under 28 U.S.C. § 1915(e)(2).

## 2. **Defendant McKee**

In their motion for summary judgment, Defendants McKee, Costello, DeRose, Smolinski and English argue that Defendant McKee, as Step II Grievant Respondent for all of Plaintiff's grievances, did not have the requisite involvement to subject him to liability under 42 U.S.C. § 1983. (Defs.' Br. in Supp. of Mot. for Summ. J. at 11.)

Defendants are correct that Defendant McKee is not liable for simply denying Plaintiff's grievances. The Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act" by prison officials does not subject supervisors to liability under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In order to be liable under § 1983, a defendant must engage in active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The Sixth Circuit, however, has found that there is a constitutional right not to be retaliated against for having filed a nonfrivolous grievance.  *See  Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)*; Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Shehee*, 199 F.3d at 301.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendants retaliated against him for filing and threatening to file grievances, threatening to file the instant lawsuit, and "speaking freely . . . regarding the validity of his G.E.D. diploma."  (Am. Compl. at 8;  Pl.'s Br. in Supp. of Pl.'s Reply to Defs.' Mot. for Summ. J. at 6-7; Dkt 68.)  Defendants allegedly retaliated by transferring Plaintiff to a higher security level prison, and by "using profanity, racial slurs, employ[ing] intimidating tactics and fabric[ating] false charges against him . . . ."  (Am. Compl. at 10; Pl.'s Br. in Supp. of Pl.'s Reply to Defs.' Mot. for Summ. J. at 2; Dkt 68.)

The ambit of a prisoner's rights to free speech and to petition the state for redress of grievances must be measured with regard to the legitimate needs of the institution. *Noble v. Schmitt*,

87 F.3d 157, 162 (6th Cir.1996) (citing *Wolfel v. Bates*, 707 F.2d 932, 933 (6th Cir. 1983)). Plaintiff's alleged protected speech about his diploma does not satisfy the first prong of a First Amendment retaliation claim because he has no constitutionally protected right to complain about his work placement.

However, the filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Moreover, transferring Plaintiff to a higher security level prison constitutes adverse action for a retaliation claim. *See Altman v. McKee,* 2008 WL 513509, at *5 (W.D. Mich. Feb. 22, 2008).

Plaintiff's allegations meet the requirements set forth in *Thaddeus-X*. Defendants have failed to address these claims in their motion for summary judgment. Therefore, Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

### 3. **Qualified Immunity**

Defendants McKee, Costello DeRose, Smolinski and English also argue that Defendants McKee and English are entitled to qualified immunity in their motion for summary judgment. (Defs.' Br. in Supp. of Mot. for Summ. J. at 14.) Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An objective reasonableness test is used to determine whether the official

could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: first, the court determines whether a constitutional violation occurred; second, the court determines whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, the court determines whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this Court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the officials conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

- 30 -

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. NuMan*, 97 F.3d 862, 866 (6th Cir. 1996).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiffs federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under § 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under § 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a

correctional officer who observes an unlawful beating may be liable under § 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under § 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's equal protection claim against Defendant English. In light of the pleadings, Plaintiff has failed to state a claim upon which relief can be granted with regard to his equal protection claim against Defendant English. Therefore, Defendant English is entitled to qualified immunity. *See Siegert,* 500 U.S. at 232; *Turner v. Scott*, 119 F.3d 425, 429 (1997).

With regard to Plaintiff's retaliation claims, it was clearly established that retaliating against a prisoner for filing grievances or lawsuits violated the First Amendment. *See Smith,* 250 F.3d at 1037. Where there is a genuine issue of material fact as to whether Defendants' conduct was motivated by a desire to retaliate against Plaintiff because of his conduct in filing grievances,

- 32 -

Defendants are not entitled to summary judgment.  Therefore, Defendants are not entitled to qualified immunity on Plaintiff's retaliation claims.

### 4.  **Summary**

In summary, Plaintiff has sustained his burden of proof in response to Defendants' motion for summary judgment with regard to his retaliation claims.  However, for the reasons stated above, Defendants are entitled to summary judgment on Plaintiff's equal protection claim against Defendant English.  Accordingly, Defendants' motion for summary judgment (Dkt 60) will be granted in part and denied in part.

### B.  Defendant Angel's Motion for Summary Judgment

In his motion for summary judgment, Defendant Angel argues that Plaintiff failed to state a claim for retaliation against him and he is entitled to qualified immunity.  (Def. Angel's Br. in Supp. of Mot. for Summ. J. at 2-3, Dkt 71.)  Specifically, Defendant Angel argues that Plaintiff cannot establish any of the elements for retaliation because Plaintiff pled guilty to the Major Misconduct ticket for gambling paraphernalia issued by Defendant Angel.  (*Id.*)  In response, Plaintiff claims that Defendant Angel searched Plaintiff and issued two Major Misconduct tickets in retaliation for Plaintiff's grievance against Defendant English.  (Pl.'s Br. in Supp. of Pl.'s Reply to Def. Angel's Mot. for Summ. J. at 4-5, Dkt 77.)

### 1.  **Retaliation**

Plaintiff alleges that on February 15, 2006, Defendant Angel said to Plaintiff: "[a]re you the one who filed the suit and keep [on] filing grievances?  Plaintiff answered, 'Yes.'  In return RUO Angel told [] [P]laintiff to turn around.  He searched [] Plaintiff and found on his possession

- 33 -

'Gambling Paraphernalia,' and issued a [M]ajor [M]isconduct [R]eport." (Pl.'s Br. in Supp. of Pl.'s Reply to Def. Angel's Mot. for Summ. J. at 4, Dkt 77.)  Plaintiff alleges that Defendant Angel, in addition to his involvement in the Gambling Paraphernalia Major Misconduct ticket, was also involved in a subsequent Major Misconduct ticket issued to Plaintiff for threatening behavior.  (*Id.* at 6.)  Finally, Plaintiff argues that he is basing his retaliation claim not only on the misconduct tickets but also on Defendant Angel's conduct before writing the ticket, i.e, for the shake-down of Plaintiff.  (*Id.* at 5.)

Under *Thaddeus X,* a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action.  *Thaddeus X*, 175 F.3d at 394.  As noted above, the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against.  *See Smith*, 250 F.3d at 1037; *Hall*, 2000 WL 1679458, at *2; *Burton*, 2000 WL 1679463, at *2.

Plaintiff's claim that he was convicted of false, retaliatory misconduct tickets written by Defendant Angel is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994).  The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing).  The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose*

- 34 -

*unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

As the Supreme Court   as stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007); *Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).

In *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *Id.*; *Thomas*, 481 F.3d at 439; *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The Court noted that "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation." *Muhammad*, 540 U.S. at 754. Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.*

Plaintiff asserts that he forfeited good-time credits for the month of his conviction. (Pl.'s Br. in Supp. of Pl.'s Reply to Def. Angel's Mot. for Summ. J. at 7.)  Accordingly, Plaintiff's claim

remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T. OF CORR., Policy Directive 03.03.105, ¶ DDD (effective Jan. 1, 2007). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[9]

Accordingly, because Plaintiff has not shown that his conviction has been reversed or invalidated, his claim is not presently cognizable. *See Caldwell v. Avery,* No. 1:05-cv-745, 2005 WL 3262436, at *4 (W.D. Mich. Nov. 30, 2005); *see also Morris v. Cason*, 102 F. App'x 902, 902 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (*Heck*-barred claim fails to state a claim and is frivolous). Because Plaintiff's retaliation claim against Defendant Angel is *Heck*-barred, Defendant Angel is entitled to summary judgment.

---

[9]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

Even if Plaintiff is merely complaining of Defendant Angel's shake-down of Plaintiff, Defendant Angel is still entitled to summary judgment. In *Pell v. Procunier*, 417 U.S. 817, 822 (1974), the Supreme Court held that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Kinard v. Rubitschun,* No. 05-74131, 2008 WL 553260, at *5 (E.D. Mich. Feb. 28, 2008.) The MDOC has a legitimate penological interest in the safety of the prison and ensuring prisoners are not engaged in prohibited activities.

Defendant Angel searched Plaintiff and discovered gambling paraphernalia on him. After Defendant Angel issued a Major Misconduct ticket to Plaintiff, Plaintiff pled guilty. Plaintiff has failed to establish the third prong of a First Amendment retaliation claim, that any adverse action was taken as a result of his exercising his First Amendment rights. *See Thaddeus-X,* 175 F.3d at 394. In his motion for summary judgment, Defendant Angel stated that the ticket was issued because Plaintiff violated prison rules prohibiting gambling. (Def. Angel's Br. in Supp. of Mot. for Summ. J. at 2.) "A finding of guilty based upon some evidence of a violation of prison rules essentially checkmates a retaliation claim." *Lewis v. Turner,* 16 F. App'x 302, 304 (6th Cir. 2001) (citation omitted).

In light of the Court's conclusion, it need not address Defendant Angel's qualified immunity argument.

## **Conclusion**

For the foregoing reasons, Defendants Kenneth McKee, Tony Costello, J. DeRose, Ann Smolinski and Lisa English's motion for summary judgment (Dkt 60) will be granted in part and

denied in part; Defendant B. Angel's motion for summary judgment (Dkt 70) will be granted; and Defendant (unknown) Peterson's motion for summary judgment (Dkt 87) will be granted.

Plaintiff's equal protection claims against Defendants Kenneth McKee, Tony Costello, J. DeRose, and Ann Smolinski fail to state a claim and those claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2). However, the Court concludes that Plaintiff's retaliation claims against Defendants Kenneth McKee, Tony Costello, J. DeRose, Ann Smolinski and Lisa English state a cognizable claim.

An Order consistent with this Opinion will be entered.


Dated:  September 30, 2008          /s/ Janet T. Neff
                                    JANET T. NEFF
                                    United States District Judge