UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERGIO TORREZ,

    Plaintiff,

v.                                                  Case No. 1:06-cv-903
                                                    HON. JANET T. NEFF

KENNETH MCKEE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Sergio Torrez, a former inmate currently on parole, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). The remaining Defendants include Kenneth McKee, Tony Costello, J. DeRose, Ann Smolinski and Lisa English. This Court issued an Opinion on September 30, 2008, dismissing all claims except Plaintiff's retaliation claims against the remaining Defendants.

> Plaintiff, a native of Puerto Rico, claims that he received a Puerto Rican certificate of high school equivalency on January 20, 1987. (Aff. at 1, Ex. B to Aff.; Dkt 51.) The certificate is written in Spanish. (Ex. 4 to Am. Compl; Dkt 50.) Prison officials at the Ojibway Correctional Facility (OCF) confirmed Plaintiff's education with the Puerto Rican Department of Education and recognized the certificate as sufficient to meet the MDOC's General Educational Development (GED) testing requirements. (Am. Compl. at 3; Aff. at 2.) Upon his transfer to IBC in 2005, however, ARUS English rejected Plaintiff's foreign diploma and classified Plaintiff as being in need of a GED. (Am. Compl. at 8.)
>
> When Plaintiff confronted ARUS English about his diploma, ARUS English, using profanity and racial slurs, told him that his Puerto Rican certificate did not mean anything. (*Id.*) Specifically, ARUS English stated: "[Y]ou are nothing but a drug-dealer, a criminal with no rights whatsoever! Get your ass out of my office before I put your ass in the hole." (*Id.*) Plaintiff filed a grievance against ARUS

English on March 27, 2005 and sent a letter to Defendant McKee's office. (Am. Compl. at 3, 8; Ex. 1 to Am. Compl.) Upon receipt of Plaintiff's correspondence, the Deputy Warden and School Principal Costello referred Plaintiff's diploma to Education Director DeRose. (Ex. 5. to Am. Compl.) Education Director DeRose concluded that OCF should not have verified Plaintiff's foreign diploma because the MDOC cannot translate those diplomas or compare them to a diploma from the United States. (Am. Compl. at 8; Ex. 5 to Am. Compl.) Defendants, therefore, recommended that Plaintiff attend Spanish GED classes, but Plaintiff refused. (Exs. 1 & 5 to Am. Compl.)

As a result of Plaintiff's grievance against ARUS English, Officer Peterson began to harass Plaintiff by performing shake-downs of his personal and legal property on a daily basis. (Am. Compl. at 8-9.) Officer Peterson confiscated or destroyed Plaintiff's personal and legal property during the shake-downs. (*Id*.) At one of the shake-downs, Officer Peterson stated, "[y]ou better quit filing grievances or I will put you in the hole. You are nothing, and we don't put up with prisoners' bull-shit." (*Id*. at 9.) Plaintiff alleges that Defendants McKee and English were aware of Officer Peterson's conduct but refused to do anything about it. (*Id*.)

On February 15, 2006, Officer Angel performed a pat-down search of Plaintiff. (Exs. 6 & 7 to Am. Compl.) Officer Angel allegedly found eight gambling tickets on Plaintiff and issued a major misconduct ticket for gambling paraphernalia to Plaintiff. (*Id*.) At that time, Officer Angel stated "[s]o, you are the guy who is filing grievances against us, ah?" (Aff. at 2, Dkt 51.) After pleading guilty to the misconduct charge, Plaintiff received seven days of detention. (Ex. 7 to Am. Compl.)

On March 27, 2006, Officer Hull issued a Major Misconduct Report to Plaintiff for threatening behavior based on a confidential informant's statements. (Am. Compl. at 9; Ex. 7 to Am. Compl.) The informant allegedly stated that Plaintiff solicited other prisoners to harm Officer Peterson for $20.00. (Ex. 8 to Am. Compl.) The Hearings Officer found Plaintiff guilty of the misconduct charge and Plaintiff received thirty days detention in punitive segregation. The MDOC subsequently transferred Plaintiff to Oaks Correctional Facility, a higher security level facility, where Plaintiff remained in the "hole" for six months rather than thirty days. (Am. Compl. at 9-10.)

At Thumb Correctional Facility (TCF), Plaintiff states that TCF School Principal Laquita Featherstone verified his diploma with the Puerto Rico Department of Education. (Aff. at 2.) However, Defendant DeRose continues to order TCF to invalidate their verification of Plaintiff's diploma. (*Id*.)

Plaintiff filed three grievances. First, Plaintiff filed Grievance No. IBC-05-03-1229-17i on March 27, 2005 against Defendant English for retaliation and discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (Ex. 1 to Am. Compl.) Plaintiff appealed the grievance to Step III. (*Id*.) Second, Plaintiff filed Grievance No. IBC-05-05-1985-17e on April 1, 2005 against Defendants Costello and Smolinski for discrimination in violation of his rights under the Fourteenth Amendment. (Ex. 2 to Am. Compl.) While Plaintiff appealed the grievance through Step III, the grievance was rejected at Step II as duplicative of the issues in Grievance No. IBC-05-03-1229-17i. (*Id*.) Third, Plaintiff filed Grievance No. IBC-06-02-439-28a5 on February 2, 2006 against Defendants Costello, Smolinski, McKee, DeRose and English for violating his First and Fourteenth Amendment rights. (Ex. 3 to Am. Compl.) Although Plaintiff appealed the grievance through Step III, the grievance was rejected at Step III as duplicative of the issues in Grievance No. IBC-05-03-1229-17i. (*Id*.)

The remaining Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the Plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad*

*v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts that the issues raised in Defendants' Motion For Summary Judgment are issues that were already decided and the Court has ruled that Plaintiff's retaliation claims state a claim. Plaintiff argues that the law of the case doctrine prevents further litigation on this issue. However, the issues presented in Defendants' motion have not been addressed by this Court. Previously, this Court concluded that Plaintiff's retaliation claims should proceed and not be dismissed. The Court explained:

> In their motion for summary judgment, Defendants McKee, Costello, DeRose, Smolinski and English argue that Defendant McKee, as Step II Grievant Respondent for all of Plaintiff's grievances, did not have the requisite involvement to subject him to liability under 42 U.S.C. § 1983. (Defs.' Br. in Supp. of Mot. for Summ. J. at 11.)
>
> Defendants are correct that Defendant McKee is not liable for simply denying Plaintiff's grievances. The Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act" by prison officials does not subject supervisors to liability under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In order to be liable under § 1983, a defendant must engage in active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The Sixth Circuit, however, has found that there is a constitutional right not to be retaliated against for having filed a nonfrivolous

grievance. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000); *Shehee*, 199 F.3d at 301.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (*citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendants retaliated against him for filing and threatening to file grievances, threatening to file the instant lawsuit, and "speaking freely . . . regarding the validity of his G.E.D. diploma." (Am. Compl. at 8; Pl.'s Br. in Supp. of Pl.'s Reply to Defs.' Mot. for Summ. J. at 6-7; Dkt 68.) Defendants allegedly retaliated by transferring Plaintiff to a higher security level prison, and by "using profanity, racial slurs, employ[ing] intimidating tactics and fabric[ating] false charges against him . . . ." (Am. Compl. at 10; Pl.'s Br. in Supp. of Pl.'s Reply to Defs.' Mot. for Summ. J. at 2; Dkt 68.)

The ambit of a prisoner's rights to free speech and to petition the state for redress of grievances must be measured with regard to the legitimate needs of the institution. *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996) (*citing Wolfel v. Bates*, 707 F.2d 932, 933 (6th Cir. 1983)). Plaintiff's alleged protected speech about his diploma does not satisfy the first prong of a First Amendment retaliation claim because he has no constitutionally protected right to complain about his work placement.

However, the filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Moreover, transferring Plaintiff to a higher security level prison constitutes adverse action for a retaliation claim. *See*

> *Altman v. McKee*, 2008 WL 513509, at *5 (W.D. Mich. Feb. 22, 2008).
>
> Plaintiff's allegations meet the requirements set forth in *Thaddeus-X*. Defendants have failed to address these claims in their motion for summary judgment. Therefore, Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

Defendants first argue that the decision to deny credit for Plaintiff's GED could not be retaliatory because that action occurred prior to any grievance filing. Plaintiff has agreed that his retaliation claim does not include the initial decision regarding the invalidity of his GED. Plaintiff has asserted that the retaliatory action came after he threatened to file grievances and did file grievances on this issue. To the extent that Plaintiff may be asserting that adverse action occurred before he filed grievances or threatened to file a grievance, those instances of alleged retaliatory action should be dismissed. Plaintiff cannot assert that a decision, simply because it is adverse, is retaliatory if he cannot show that he engaged in any protected conduct. The adverse action has to be taken because Plaintiff engaged in protected conduct. If Plaintiff is asserting that Defendants took adverse action against him by refusing to honor his GED, that decision cannot be retaliatory action because that is the first action that was taken. Plaintiff cannot complain that the decision to deny the validity of his GED was retaliation simply because the Defendants may have known that Plaintiff would not like the decision. It is only the acts taken after Plaintiff filed grievances or threatened to file grievances that can be considered retaliatory acts. In this case, the issue is whether Plaintiff's transfer to a higher level of security was in retaliation for his grievance filings or threats to file a grievance. Defendants argue that Plaintiff's security level was increased because of major misconducts and to transfer inmates in response to a prisoner exchange request by another facility.

Defendants have shown that Plaintiff's increase in security classification was the result of his misconduct violations. On April 6, 2006, Plaintiff's security classification was

increased from Level II to Level IV. This change was the result of Plaintiff receiving four major misconducts: two for gambling and possession of gambling paraphernalia, one for unauthorized occupation of a cell or room, and one for threatening behavior. Defendants did not issue these tickets. Plaintiff was found guilty of each misconduct. Plaintiff was transferred on April 19 to the Oaks Correctional Facility (ECF) "to facilitate an exchange at ECF request." None of the Defendants were involved in issuing the misconduct tickets, increasing Plaintiff's security level, or transferring Plaintiff to a different prison. Plaintiff's grievance activity against Defendant English occurred over one year prior to the his increase in security classification and his transfer. In fact, Defendant English conducted three security classification reviews after Plaintiff filed his grievance against her and each time she classified Plaintiff at level II. Moreover, Defendant English issued a May 18, 2005, transfer order which reduced Plaintiff's classification level from level IV to level II. These reviews occurred before Plaintiff's security classification level was increased by another reviewing prison official who is not a defendant in this action. Defendants took no action to raise Plaintiff's security classification or to cause his transfer. Only Defendant McKee, in his capacity as Warden, approved the security classification screen which was prepared by non-defendant Hadden. However, Plaintiff cannot show that Defendant McKee was acting in retaliation for prior grievance filings in approving the increase in security classification.

Alternatively, Defendants move for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness"

test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity. Plaintiff has not shown that Defendants violated his rights by retaliating against him. The decision to require Plaintiff to take classes because his GED was considered invalid was made prior to Plaintiff's grievance filing or threats to file a grievance. Moreover, Plaintiff's security classification level was increased over one year after he filed grievances on this issue. The decision to raise Plaintiff's security classification level was made due to misconduct tickets Plaintiff received from individuals who are not defendants in this action. Plaintiff's security classification was raised by an individual who is not a defendant in this action. Similarly, Plaintiff has not rebutted Defendants' showing that he was transferred to a different prison for legitimate reasons to facilitate a prisoner exchange at the request of another prison. In the opinion of the undersigned, Plaintiff has failed to show that Defendants violated clearly established law.

Accordingly, it is recommended that Defendants' Motion For Summary Judgment (Docket #135) be granted and this case be dismissed in its entirety.[1]

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                     /s/ Timothy P. Greeley
                                     TIMOTHY P. GREELEY
                                     UNITED STATES MAGISTRATE JUDGE

Dated: December 2, 2010

---

[1] To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).